## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CORINNE PERRY,<br><br>                    Plaintiff,<br>    v.<br><br>CITY OF STAMFORD,<br><br>                    Defendant. | 3:11-cv-01833 (CSH) |

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**HAIGHT, Senior District Judge:**

**I.      Introduction and Summary of Facts**

Plaintiff Corinne Perry (hereinafter "Plaintiff"), who was known by the name Corinne Stevens at the time of events relevant to this lawsuit, brings this action against Defendant City of Stamford (hereinafter "Defendant") for allegedly discriminating against her "in public employment on the basis of the fact that she was a woman who had survived breast cancer, in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution as enforced by Sections 1983 and 1988 of Title 42 of the United States Code." [Doc. 1] at 3.  Plaintiff initiated this action on November 28, 2011, over five years after the employment events in question.  *See* [Doc. 1] at 1.  Defendant City of Stamford filed a Motion to Dismiss in this matter, [Doc. 14], and it now files a Motion for Summary Judgment, [Doc. 28].  Plaintiff filed an amended memorandum in opposition to Defendant's Motion for Summary Judgment, [Doc. 35], and Defendant filed a Reply brief, [Doc. 37].  Defendant's Motion for Summary Judgment is therefore ripe for adjudication.

Plaintiff avers that she applied for a position as an officer with the Stamford Police

Department in 2006 and that, on July 12, 2006, Defendant, acting through its Director of Human Resources Dennis C. Murphy, "informed [Plaintiff] in writing that her application was being rejected because a preliminary investigation had disclosed that she had participated in a criminal insurance fraud." *Id*. at 2.  Shortly thereafter, "believing that [Defendant] may have misrepresented its true reasons for rejecting her application," which, as Plaintiff avers, is her status as a breast cancer survivor, Plaintiff "through counsel served a subpoena duces tecum upon Dennis C. Murphy, commanding him to produce at a deposition at the office of her attorney '[t]he entire files of the City of Stamford Human Resources Department and Police Department concerning [Plaintiff].'" *Id.* Plaintiff avers that Mr. Murphy "produced at the office of [her] attorney a collection of documents which he represented constituted everything that had been subpoenaed;" however, such materials "were not complete and did not include evidence which would have established that the stated reason for rejecting [her] application was not the true reason" – the true reason being, Plaintiff again avers, her status as a breast cancer survivor.  As such, Plaintiff contends, Defendant "fraudulently concealed from [her] the evidence necessary to commence this litigation within three years from July 12, 2006." *Id*. at 2-3.

Defendant denies that it or any of its employees who were involved with processing and evaluating Plaintiff's 2006 police officer application knew of Plaintiff's history with breast cancer, and contends that Plaintiff has "failed to offer any admissible evidence to contradict Defendant's evidence" that this was the case. [Doc. 37] at 3.  In Defendant's Motion for Summary Judgment, [Doc. 28], Defendant raises three specific legal arguments:  (1) that the applicable statute of limitations bars this action; (2) that, in the alternative, Plaintiff fails to state a cognizable violation of the Equal Protection Clause and, even if she had done so in her Complaint, the undisputed

evidence in this case does not support such a claim; and (3) that Plaintiff is unable to prove, based on the undisputed evidence, that Defendant City of Stamford had an official policy that resulted in the alleged discrimination and, therefore, Plaintiff cannot pursue her claim against Defendant. [Doc. 28] at 1.

The relevant facts are as follows.  Plaintiff applied to become a police officer for Defendant City of Stamford in 2004, and again in 2006.  As Mr. Murphy, then-Human Resources Director for Defendant states in an Affidavit, "[o]n May 8, 2006 the Human Resources Department sent [Plaintiff] a letter informing her that she had achieved a passing score on the April 2006 oral examination and that she would be contacted very soon by the Stamford Police Department to begin the background investigation process." [Doc. 29] at 2; *see also, e.g., id.* at 7 (a copy of the May 8, 2006 letter sent to Plaintiff).  In connection with her 2006 application to become a City of Stamford police officer, Plaintiff participated in a pre-employment polygraph exam on June 14, 2006.  *See, e.g., id.* at 33.  This exam was conducted by A.D.M. Associates Investigations L.L.C. (hereinafter "A.D.M. Associates Investigations"), an entity which was not affiliated with Defendant, but was rather an outside company which performed pre-employment polygraphs for Defendant's Internal Affairs Division.  Defendant's Internal Affairs Division conducted background checks on individuals who had applied to work for Defendant.  *Id.* at 44-45.  Prior to taking her pre-employment polygraph, Plaintiff completed a pre-polygraph questionnaire, in which she claims she revealed her medical history including the fact that she is a breast cancer survivor.  As discussed *infra*, there is no evidence on record, save Plaintiff's own testimony, to support Plaintiff's averment that she made such disclosures on the pre-polygraph questionnaire.

According to the Affidavit of Louis DeRubeis, who in 2006 "was working in the Internal

3

Affairs Division of the [Stamford] Police Department," after Plaintiff "attended her pre-employment polygraph on June 14, 2006, A.D.M. Associates Investigations contacted [Defendant] and reported that [she] had knowingly inflated an insurance claim." *Id.* A copy of this letter may be found at page 11 of [Doc. 29], and in addition to the inflated insurance claim, it informs Defendant that Plaintiff reports having been disciplined over the course of previous employment for a security company and a pizzeria. *Id.* at 11. In addition, Mr. DeRubeis, states, A.D.M. Associates Investigations "forwarded to the police department a report summarizing the results of [Plaintiff's] pre-employment polygraph," but "did not provide the police department with any graphs generated during [her] polygraph or any questionnaire she may have filled out or any other document, CD, or video." *Id.* at 45.

Mr. DeRubeis avers that in response to having received this letter from A.D.M. Associates Investigations, "[o]n or about June 19, 2006, the Internal Affairs Division of the Stamford Police Department sent a memorandum to the Human Resources Department concerning the results of [Plaintiff's] pre-employment polygraph," which, using the information provided to Defendant's Internal Affairs Division by A.D.M. Associates Investigations, reported that Plaintiff had "knowingly inflated an insurance claim as the result of a fire in the kitchen of her home," and "noted that based on [such] information," the Internal Affairs Division felt that Plaintiff was "no longer a suitable candidate for the position of Police Officer with the City of Stamford." *Id.* Mr. DeRubeis further states that "A.D.M. Associates [Investigations] did not inform the Internal Affairs Division of the Police Department that [Plaintiff] was a breast cancer survivor[,] if the company had that information," and that the Internal Affairs Division was not privy to such information at the time the June 19, 2006 memorandum was sent to Defendant's Human Resources Department. *Id.* at 45-46.

4

A copy of the June 19, 2006 letter sent from A.D.M. Associates Investigations to Defendant's Human Resources Department may be found at page 9 of [Doc. 29]. It does not mention Plaintiff's status as a breast cancer survivor, but, rather, states that Plaintiff revealed at her pre-employment polygraph exam that "in 2005, she knowingly inflated an insurance claim as the result of a fire in the kitchen of her home," elaborating that when "an insurance adjuster from her home owner's insurance company ... gave her an estimated damage and repair amount of $20,000,... her mother and a friend advised her to contact a private appraiser, in an attempt to get more money, which she did." *Id.* at 9. This private appraiser, the letter states, "raised the estimated cost of the damage and repair to $38,000," and therefore Plaintiff had stated that she "[believe[d] the estimate was inflated by $18,000." *Id.* It also reports that Plaintiff further "stated that she and the appraised profited about $4,000 each from the inflated insurance claim, although that amount may be higher [and Plaintiff] stated that she could not accurately account for how the money was disbursed." *Id.*

Mr. Murphy states that upon receipt of the June 19, 2006 information sent to Defendant's Human Resources Department from Defendant's Internal Affairs Department, he sent a letter to Plaintiff, dated July 12, 2006, in which he advised her that Defendant had "carefully reviewed [her] Police Officer application file," and that the background investigation had revealed that she had knowingly inflated an insurance claim. "Based on [this] information, and in accordance with the City of Stamford Classified Service Rules," Mr. Murphy informed Plaintiff that "no further consideration [would] be given to [her] application," and, as well, that her name had been removed from a "Police Officer eligible list from the 2004 [police officer exam]," where it had been due to Plaintiff's 2004 application to work for Defendant. *Id.* at 16.

Plaintiff responded to Mr. Murphy's letter on August 8, 2006, writing in substantive part:

Dear Mr. Murphy:

This letter is to inform you that I am withdrawing both my 2004 and 2006 applications for the position of Stamford Police Officer.

If I had known that either the Connecticut State Police [or] Bridgeport Police departments would be accepting applications this year I would not have applied.

Furthermore, the greatest obstacle I face in regard to my eligibility on any police force is being held accountable for the actions of those to whom I was married, although as a result of their behaviors it was my children and I who suffered the most.

In conclusion, both this most recent application and my original application mark a time in my life I would rather forget peacefully and with goodwill toward the Stamford Police Department and all those concerned.

[Doc. 29] at 18.  (Plaintiff's pleadings offer little explanation with respect to her reference to "those to whom [she] was married" in the above-quoted letter, or to the relationship between this reference and the current lawsuit, if any.)

Plaintiff states in her Opposition to Defendant's Motion for Summary Judgment [Doc. 35] that, upon learning of Defendant's decision not to further consider her police officer application or shortly thereafter, she "believed that the reason given by [Defendant]" for declining to further consider her 2006 police officer application – i.e., her allegedly revealing that she had inflated an insurance claim – "was a pretext to disqualify her as an applicant and that the real reason was that she was a cancer survivor."  Not long after, and presumably due to this belief, "[s]he filed Freedom of Information Act requests." [Doc. 35] at 2.  In addition, Plaintiff avers that after she received the July 12, 2006 letter from Mr. Murphy, "her attorney David Laudano contacted [Mr. Murphy] by letter on two occasions" within the ensuing month, "providing proof of loss and documentation of the expenses paid by [her] for the fire damage in her home," [Doc. 34] at 3, presumably in order to show him that no insurance fraud had taken place.  Plaintiff states that although her attorney

6

requested a meeting with Mr. Murphy, giving Mr. Murphy "an opportunity to reconsider the ostensible reason that [Defendant] had rejected [her] as a candidate for a position in the police department ... [Mr. Murphy] decided instead to infer that [she] could be prosecuted criminally for her actions unless she withdrew her application." *Id*. at 3-4.

The Court must add an additional note with respect to the evidence proffered in this matter. Plaintiff has provided in support of her Opposition Memorandum to Defendant's Motion for Summary Judgment several deposition transcript excerpts and exhibits taken for another legal action, *Corinne Perry v. Joseph Vitti and Steven K. Shuck*, FBT CV 07 5007385 S, brought in the State of Connecticut Superior Court, Judicial District of Fairfield, held at Bridgeport. Puzzlingly, however, Plaintiff has made little effort to demonstrate or affirm that such prior testimony is admissible to the record in this matter. Plaintiff does not explain to this Court the nature of her complaint against defendants in the state court action, which the Court, through its independent research, sees to have been defamation. Rather, Plaintiff merely states with respect to the lawsuit brought in Connecticut Superior Court that her "neighbor was an employee of Stamford in the Fire Department and [that Plaintiff] had pending civil litigation against him; she took the depositions of Dennis Murphy, Maggie Murray of [Defendant's] Human Resources [Department,] and Sgt. Di Carlo in that case." [Doc. 35] at 2; *see also, e.g.*, [Doc. 34-1] at 97, 107, 115, and 121. While Plaintiff seems to suggest in her deposition testimony that the defendants in the state court action were somehow acting in concert with those employees of the Defendant in this action who made decisions with respect to Plaintiff's 2006 police officer application, and while the witness in at least one of the deposition transcripts cited in her pleadings and attached as exhibits thereto is also a witness in the case before this Court, Plaintiff makes little effort to explain or authenticate these documents or to show that

they are relevant to or contain evidence admissible in the case at bar in this Court.

"A district court deciding a summary judgment motion has broad discretion in choosing whether to admit evidence." *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009) (citation and internal quotation marks omitted). "The principles governing admissibility of evidence do not change on a motion for summary judgment," and thus "[i]t is difficult to see how a court can decide a summary judgment motion without deciding questions of evidence." *Id.* (citation omitted). The Second Circuit has clearly stated that "only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997); *see also, e.g., United States v. United States Gypsum Co.*, 340 U.S. 76, 85 (1950). Indeed, "[b]ecause the purpose of summary judgment is to weed out cases in which 'there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law,' ... it is appropriate for district courts to decide questions regarding the admissibility of evidence on summary judgment." *Id.* (citation omitted). Consequently "[a]lthough disputes as to the *validity* of the underlying data go to the weight of the evidence, and are for the fact-finder to resolve, ... questions of admissibility are properly resolved by the court." *Id.* (citations omitted).

Pursuant to Fed. R. Evid. 804(b)(1)(A) and (B), former testimony that "was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one and ... is now offered against a party who had – or, in a civil case, whose predecessor in interest had – an opportunity and similar motive to develop it by direct, cross-, or redirect examination," is not excluded by the rule against hearsay. Fed. R. Civ. P. 32(a)(8) further states: "A deposition lawfully taken and, if required, filed in any federal – or state – court action may be used

in a later action involving the same subject matter between the same parties, or their representatives or successors in interest, to the same extent as if taken in the later action.  A deposition previously taken may also be used as allowed by the Federal Rules of Evidence."  As evidenced by the caption of the aforementioned state court matter, that case and the one at bar do not share the same defendants, nor is there any suggestion on Plaintiff's part either that this case and the state court case involve the same subject matter or that, despite the overlap of at least one witness for that matter and this one, the Defendant in this matter had an opportunity and similar motive to develop the subject matter through any means of examination when witnesses were being deposed for the state court litigation.       Accordingly it is unclear whether the Court ought to consider any proffered deposition testimony from the state court action captioned *Corinne Perry v. Joseph Vitti and Steven K. Shuck*.  This question, however, is largely irrelevant as even if the Court *were* to consider the proffered deposition transcripts from the state court action, its ruling with respect to Defendant's Motion for Summary Judgment would be the same, as the information and alleged evidence contained within these transcripts, including a remark in the notes of Maggie Murray that Plaintiff's reported insurance fraud would be a "home run" with respect to her application status, discussed in Ms. Murray's deposition transcript and attached as an exhibit thereto, *see, e.g.,* [Doc. 34-1] at 109, 120 – which Plaintiff briefly mentions in her pleadings as evidence that she was discriminated against due to her status as a breast cancer survivor – do not help Plaintiff succeed in surviving a motion for summary judgment.

## II.    Standard of Review

The standards for summary judgment are familiar.  Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment

as a matter of law." F. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). The role of a district court in considering a motion for summary judgment is therefore "not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *In re Dana Corp.*, 574 F.3d 129, 151 (2d Cir. 2009). The moving party, in this case the Defendant, bears the burden of showing that he is entitled to summary judgment. Once he has satisfied this burden, in order to defeat the motion the party opposing summary judgment, in this case the Plaintiff, "must set forth specific facts demonstrating that there is a genuine issue for trial." *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir 2009) (internal quotation marks omitted). A dispute about a genuine issue of fact exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In making its determination on a summary judgment motion, a trial court will resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought – here, Plaintiff. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 274 (2d Cir. 2009). It is "[o]nly when reasonable minds could not differ as to the import of the evidence" that summary judgment is proper. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991). When "a motion for summary judgment is properly supported by documentary and testimonial evidence ... the nonmoving party may not rest upon the mere allegations or denials of his pleadings, but rather must present significant probative evidence to establish a genuine issue of fact." *Marczeski v. Gavitt*, 354 F.Supp. 2d 190, 193 (D. Conn. 2005) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986)).

In order to present a "genuine issue of material fact" the nonmoving party – i.e., Plaintiff –

must therefore present contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248.  Consequently the nonmoving party must present affirmative evidence in order to defeat a properly supported summary judgment motion.  As the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," if the nonmoving party submits evidence that is "merely colorable," summary judgment may be granted.  *Id.* at 247-50.  In sum, a "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. at 322.

## III.   Legal Discussion

Defendant has moved for Summary Judgment in this action, averring:  (1) that the applicable statute of limitations bars this action; (2) that, in the alternative, Plaintiff fails to state a cognizable violation of the Equal Protection Clause and, even if she had done so in her Complaint, the undisputed evidence in this case does not support such a claim; and (3) that Plaintiff is unable to prove, based on the undisputed evidence, that Defendant City of Stamford had an official policy that resulted in the alleged discrimination and, therefore, Plaintiff cannot pursue her claim against Defendant. [Doc. 28] at 1.

As the Court agrees with Defendant that the applicable statute of limitations bars this action, and, moreover, as the Court agrees with Defendant that no reasonable mind could differ as to the conclusion that Plaintiff has not provided any significant probative evidence regarding the cornerstone of her lawsuit, i.e., her assertion that Defendant and, specifically, Mr. Murphy, had knowledge of her medical history with breast cancer at the time her 2006 application for employment with Defendant was evaluated and denied by letter in July of 2006, the Court does not and need not

11

reach Defendant's second and third arguments with respect to summary judgment.

### A.     The Applicable Statute of Limitations

As the Second Circuit has repeatedly noted, "[s]ince Congress did not enact a statute of limitations governing actions brought under § 1983, the courts must borrow a state statute of limitations" and, as Section 1983 claims "are best characterized as personal injury actions, ... a state's personal-injury statute of limitations ... should be applied" to them. *Lounsbury v. Jeffries*, 25 F.3d 131, 133 (2d Cir. 1994) (citations omitted); *see also Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) ("Section 1983 does not provide a specific statute of limitations. Thus, courts apply the statute of limitations for personal injury actions under state law") (citations omitted). "Under Connecticut law, an action founded upon a tort carries a three-year statute of limitations, and under federal law, a claim accrues for statute of limitations purposes when the plaintiff knows or has reason to know of the harm." *Assegai v. Bloomfield Bd. of Ed.* 165 Fed. Appx. 932, 934 (2d Cir. 2006) (internal citations and quotation marks omitted). Consequently, "[i]n Connecticut, a plaintiff must bring his § 1983 claim within three years of the date his claim accrues." *Barile v. City of Hartford*, 264 Fed. Appx. 91, 91 (2d Cir. 2008) (citations omitted).

In the case at bar, the relevant events, including Plaintiff's being notified that her City of Stamford police officer application and candidacy would not be further considered, took place in the summer of 2006; accordingly, the statute of limitations for an action brought against Defendant pursuant to Section 1983 would have expired within the 2009 calendar year. Plaintiff did not commence this lawsuit until November 28, 2011, roughly two years after such expiration date. *See* [Doc. 1]. Plaintiff addresses the matter of the statute of limitations in § 1983 actions in her Complaint, stating that "[o]n July 19, 2007," – i.e., a date *within* the applicable statute of limitations

12

– Plaintiff, "believing that [Defendant] may have misrepresented its true reasons for rejecting her application, ... through counsel served a subpoena duces tecum upon Dennis C. Murphy, commanding him to produce at a deposition at the office of her attorney '[t]he entire files of the City of Stamford Human Resources Department and Police Department concerning' [her]." [Doc. 1] at 2.  As these materials were, Plaintiff alleges, "not complete and did not include evidence which would have established that the stated reason for rejecting [her] application was not the true reason," Defendant "fraudulently concealed from [her] the evidence necessary to commence this litigation within three years [of] July 12, 2006."  *Id.* at 2-3.  Plaintiff therefore contends that the statute of limitations for her claim was, due to the above-described circumstances, subject to equitable tolling due to fraudulent concealment.

### B.   Fraudulent Concealment Doctrine and the Equitable Tolling of a § 1983 Statute of Limitations

"Equitable tolling permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence," that plaintiff "is unable to obtain vital information bearing on the existence of his claim."  *Valdez ex rel. Donely v. U.S.*, 518 F.3d 173, 182 (2d Cir. 2008) (citation and internal quotation marks omitted).  Under the fraudulent concealment doctrine, even when a claim has already accrued, a plaintiff may benefit from equitable tolling in the event that specific steps were taken by a defendant to conceal its actions.  The Second Circuit "recognizes an equitable tolling doctrine in the context of § 1983 actions, and when a 'defendant fraudulently conceals the wrong, the time [limit of the statute of limitations] does not begin running until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, the cause of action.'" *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995) (quoting *Keating v. Carey*, 706 F.2d 377, 382

(2d Cir. 1983)).  The Court of Appeals cautions that in order "[t]o take advantage of this doctrine, however, a plaintiff *must submit non-conclusory evidence* of a conspiracy or other fraudulent wrong *which precluded his possible discovery of the harms that he suffered*."  *Id.*  (citation omitted) (emphasis in original).

### C.    Plaintiff's Proffered Proof that Fraudulent Concealment has Occurred

The Connecticut fraudulent concealment statute, C.G.S.A. §52-595, provides: "If any person, liable to an action by another, fraudulently conceals from him the existence of the case of action, such cause of action shall be determined to accrue against such person so liable therefore at the time when the person entitled to sue thereon first discovers its existence."  Construing this statute, the Connecticut Supreme Court has repeatedly noted that "[t]he party alleging fraud" – i.e., Plaintiff in the case at bar – "bears the burden of proving it with clear, precise, and unequivocal evidence," and "[p]roof by circumstantial evidence is sufficient [only] where rational minds could reasonably and logically draw the necessary inferences." *Falls Church Group, Ltd. v. Tyler, Cooper and Alcorn, LLP*, 281 Conn. 84, 110 (Conn. 2007) (quoting *Bound Book Association v. Norwalk*, 198 Conn. 660, 666 (Conn. 1986) and citing *J. Frederick Scholes Agency v. Mitchell*, 191 Conn. 353, 358 (Conn. 1983) and *Puro v. Henry*, 180 Conn. 301, 310 (Conn. 1982)).

In order to provide a requisite level of proof under Connecticut's fraudulent concealment statute, a plaintiff is "required to show that [a defendant]: (1) had actual awareness, rather than imputed knowledge, of the facts necessary to establish the [plaintiff's] cause of action; (2) intentionally concealed these facts from the [plaintiff]; and (3) concealed the facts for the purpose of obtaining delay on the [plaintiff's] part in filing a complaint on [his or her] cause of action." *Rohner v. Town of Coventry*, 581 F.Supp. 2d 315, 319 (D.Conn. 2008) (examining in relevant part

14

whether a potential § 1983 claim had been equitably tolled under C.G.S.A. §52-595).  Indeed, as the Second Circuit has observed, "under Connecticut law fraudulent concealment for purposes of the tolling statute is consistently treated as akin to other forms of fraud, with similar requirements of proof." *Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 196 F.3d 409, 422 (2d Cir. 1999) (citing *Puro v. Henry*, 180 Conn. at 308 for the observation that under Connecticut law the general rule with respect to fraudulent concealment is that the "[f]raud is not to be presumed, but must be strictly proven.  The evidence must be clear, precise, and unequivocal.")

The Second Circuit has further stated with respect to C.G.S.A. §52-595:

> Although §52-595 does not explicitly say so, it clearly implies [a] plaintiff's ignorance of the facts is a necessary element of tolling under that statute.  A statute that tolls a limitations period because of the defendant's fraudulent concealment of a fact or facts obviously operates for the benefit of those – and we think *only* those – who are not aware of the fact or facts that have been concealed.  Moreover, because the statute provides that, after tolling, 'the cause of action shall be deemed to accrue ... at the time when the person entitled to sue thereon first discovers its existence,' there plainly can be no effective tolling for a plaintiff who was aware of the existence of his or her cause of action from the time the claim originally accrued.  We therefore conclude that [a] plaintiff must be ignorant of the facts that [a] defendant has sought to conceal for the statute of limitations to toll under §52-595.

*Id.* at 427.  Thus, as Judge Underhill recently noted, under Connecticut law "in order to toll a statute of limitations for fraudulent concealment, *the plaintiff must prove that he did not know the facts supporting his cause of action*.  In other words, the plaintiff cannot toll a limitations period based on the defendant's fraudulent concealment *if the plaintiff already discovered the facts* [purportedly] establishing the defendant's liability." *Dennany v. Knights of Columbus*, 3:10-cv-01961, 2011 WL 3490039 at *5 (D.Conn. August 10, 2011) (emphasis added) (citation omitted).  Thus "[o]nce a plaintiff is aware of facts that [a] defendant allegedly concealed, the limitations period begins to run." *Id.*

Plaintiff's argument with respect to the evidence which was allegedly concealed from her in 2006 and 2007 – and which allegedly gives rise to the fraudulent concealment doctrine with respect to the applicable three-year statute of limitations – appears chiefly to be that as part of her pre-employment polygraph with A.D.M. Associates Investigations, she filled out a pre-polygraph questionnaire which contained questions about her medical history. Plaintiff avers that on this questionnaire she included information about her history with breast cancer, and that, in July of 2006 when it made the decision not to continue with her application, "the City of Stamford had in its possession a copy of th[is] ADM pre-polygraph questionnaire which [P]laintiff had completed before her polygraph." [Doc. 34] at 3. Plaintiff then contends that, in 2007, "believing that [Defendant] may have misrepresented its true reasons for rejecting her application, ... [Plainitff] through counsel served a subpoena duces tecum upon Dennis C. Murphy, commanding him to produce at a deposition at the office of her attorney '[t]he entire files of the City of Stamford Human Resources Department and Police Department concerning' [her]." [Doc. 1] at 2. Such materials were, Plaintiff alleges, "not complete," presumably because they did not include Plaintiff's pre-polygraph questionnaire and other polygraph-related materials, and thus "did not include evidence which would have established that the stated reason for rejecting [her] application was not the true reason;" accordingly Defendant "fraudulently concealed from [her] the evidence necessary to commence this litigation within three years [of] July 12, 2006." *Id*. at 2-3. Plaintiff therefore contends that the statute of limitations for her claim was, due to the above-described circumstances, subject to equitable tolling due to fraudulent concealment.

Plaintiff seems accordingly to contend that a statute of limitations on her § 1983 claim only began to run when she was, in 2010, provided with a copy of this pre-polygraph questionnaire.

However, "the page with the medical questions" was blank on this copy of the questionnaire on which Plaintiff avers she disclosed her status as a breast cancer survivor prior to her June 14, 2006 polygraph with A.D.M. Associates Investigations, and "contain[ed] no responses by the plaintiff." [Doc. 34-1] at 13. Plaintiff states that the fact that this page of the copy of the questionnaire she she was provided in 2010 in and of itself "is evidence that the defendant intentionally failed to disclose that it had knowledge of her medical history in July[] [of] 2006," as, she states, she distinctly recollects filling out the questionnaire's medical question page. *Id.* The Court has examined the copy of the medical questionnaire which Plaintiff states she received in 2010, which is filed as [Doc. 34-1] at 4, and it does indeed contain a page, page 8, marked "Medical History." Aside from two handwritten asterisks located next to the subject heading "Medical History," this page copy contains no responses from Plaintiff or, for that matter, any writing at all. *See id.* The Court notes that Plaintiff stated at her deposition that she had in actuality filled out this page prior to her June 2006 pre-employment polygraph with A.D.M. Associates Investigations, including, presumably, her history with breast cancer. The Court further notes Plaintiff's remarks that she had "purposefully" done so "after [being] told ... [she] didn't have to," and that she recollects explicitly telling the polygraph examiner that she was doing so: "because you already know and you're already going to turn me down. So I'm going to fill this out anyway." [Doc. 29] at 32.[1]

---

[1]   The Court also notes that, as to the rest of the questionnaire she was provided in 2010, Plaintiff stated at her deposition that it contained some of her handwriting, and some handwriting that was not hers. [Doc. 29] at 31. However, she states that, when she initially filled out this questionnaire, only she had written on it. *Id.* Plaintiff further alleges that "they also withheld the polygrapher's real scratch paper," which she "saw ... when he was trying to convince [her] that [she] had inflated an insurance claim, and he wrote on a diagonal all the way across the paper," and the questionnaire in evidence "is not it" but, rather, "was made ex post facto" and was not "his true scratch paper." *Id.* at 33.

In addition to the questionnaire, Plaintiff states in her deposition testimony that she has reason to believe that Mr. Murphy had knowledge that she was a breast cancer survivor due to "the fact that several of the members of the police department during [her pre-employment] second physical agility test showed up, including Lieutenant Cronin who [Plaintiff] didn't know had cancer, and mentioned how fast [Plaintiff] ran, what good shape [she] was [in] considering all, quote, [Plaintiff had] been through ... So it made it very clear that [Lieutenant Cronin] knew." *Id.* at 36. However, Plaintiff makes no mention of this allegation in her pleadings and there is no additional evidence on the record as to this claim.  Plaintiff's other statements with respect to her belief that Defendant knew of her history with breast cancer are similarly vague,  conclusory, and without other support on the record, admissible or otherwise.[2]  The Court does note that in her opposition brief, and without citation to any specific evidence on the record, Plaintiff "contends that [Sergeant] DiCarlo had access to the [A.D.M.] questionnaire in July, 2006, and that the information concerning her cancer history was the real reason that she was sent the rejection letter from the defendant." [Doc. 35] at 2.[3]  Puzzlingly, Plaintiff's pleadings do not offer an explanation of the relationship, if any, between Sergeant DiCarlo and decisions made with respect to Plaintiff's 2006 application for employment with Defendant; in Plaintiff's deposition, however, she states that "he was ... present at the meeting with Dennis Murphy to have [Plaintiff] withdraw [her] application." [Doc. 29] at 39. Nonetheless, there is no evidence on record, aside from Plaintiff's own contentions, to support such

---

[2]  *See* the Court's discussion *supra* with respect to Plaintiff's submission into evidence of deposition transcripts taken pursuant to a state court action in which she was a party.

[3]  Plaintiff also makes a similar assertion with respect to Defendant's employees, including Mr. Murphy, Ms. Murray, and Sergeant DiCarlo having had access to the A.D.M. Associates Investigations pre-polygraph questionnaire in her Rule 56(a)(2) Statement, although the citations she provides do not directly support such a claim.  *See* [Doc. 34] at 2.

an allegation.

The Court also notes the allegations contained within Plaintiff's Reply to Defendant['s] First Set of Interrogatories and Requests for Production, dated August 13, 2012, and submitted by Plaintiff in support of her Memorandum in Opposition to Defendant's Motion to Dismiss. *See* [Doc. 34-1] at 51-52. While Plaintiff puzzlingly does not mention most of these allegations in her pleadings, she lists seventeen items which she claims were not produced by Defendant which would have established that the stated reason for rejecting her application – i.e., insurance fraud – was not the true reason for Defendant's employment decisions with respect to her 2006 police officer application. As Plaintiff does not discuss the significance of the majority of these items anywhere in her briefs in this case, or, for that matter, provide any other basis or support for her assertions, it is difficult for the Court to evaluate these claims, or even whether Plaintiff intends to advance such claims to the Court. It is Plaintiff's burden to offer sufficient proof with respect to a fraudulent concealment claim, and in order to survive a motion for summary judgment a plaintiff must present significant probative evidence to establish a genuine issue of fact; the Court cannot, even under the relatively forgiving standards of summary judgment, find that such an enumerated list of claims by itself and without further context, analysis, or discussion comes remotely close to such a level of proof. Furthermore, even if it *were* true that such items had not been provided to Plaintiff by Defendant – and the Court makes no finding that this was the case – that *still* would not be sufficient to support a claim for fraudulent concealment for the reasoning articulated *infra*.[4]

---

[4]   The Court also notes that while Plaintiff contends in her Reply to Defendant['s] First Set of Interrogatories and Requests for Production, dated August 13, 2012, [Doc. 34-1], that "Captain Joe Vitti taunted [her] about having breast cancer for over two years, not limited to, but including the dates of September 4, 2004, December 28, 2004, and June 12, 2006," *id*. at 52, Joseph Vitti, a defendant in Plaintiff's aforementioned state court lawsuit, is not in fact a captain

Defendant's witnesses have provided testimony and affidavits averring that its employees who were involved with evaluating Plaintiff's 2006 police officer application neither knew that she was a breast cancer survivor nor in any way discriminated against Plaintiff due to her medical history.   Mr. Murphy stated in his affidavit that he "did not know that she [was] a breast cancer," and, "[a]s a result, the fact that she [was] a breast cancer survivor played absolutely no role in [his] decision" with respect to her police officer application.  [Doc. 29] at 4.  He has also stated that he "never intentionally withheld any documents from the plaintiff," and that "[a]t the time [he] sent the July 12, 2006 letter to [her], [he] did not have access to any documents, CDs, videos or tapes, which A.D.M. Associates might have relied upon when its agents/employees reported the results of [her] pre-employment polygraph to the Stamford Police Department."  *Id.* at 4-5.  "In particular," he has confirmed, he "did not review any questionnaire[] which the plaintiff had completed at the request of A.D.M. Associates."  *Id.* at 5.

Mr. DeRubeis has similarly stated that when "A.D.M. Associates Investigations forwarded to the police department a report summarizing the results of the pre-employment polygraph of the plaintiff[,] A.D.M. Associates did not provide the police department with any graphs generated during the plaintiff's polygraph or any questionnaire she may have filled out or any other document, CD or video."  *Id*. at 45.  He also stated that "A.D.M. Associates did not inform the Internal Affairs Division of the Police Department that the plaintiff was a breast cancer survivor if the company had

---

with Defendant, the Stamford *Police* Department, but rather a captain with the Stamford *Fire* Department.  While as noted *supra* it appears from comments made in Plaintiff's deposition transcript that Plaintiff believes that various employees of Defendant City of Stamford were in league with one another in order make her life generally unpleasant, the Court does not accept such an allegation, without other support which is not here present, as proof of any discriminatory conduct on the part of Defendant.

that information.  That was not information [employees of Defendant's Department of Internal Affairs] were privy to at the time the June 19, 2006 Internal Affairs Memorandum was sent to the Human Resources Department."  *Id*. at 45-46.

As noted *supra* with respect to Connecticut's law on fraudulent concealment, "[t]he party alleging fraud bears the burden of proving it with clear, precise, and unequivocal evidence," and "[p]roof by circumstantial evidence is sufficient [only] where rational minds could reasonably and logically draw the necessary inferences."  *Falls Church Group, Ltd. v. Tyler, Cooper and Alcorn, LLP*, 281 Conn. at 110 (citations omitted).  Thus, in order to take advantage of the fraudulent concealment "doctrine, ... a plaintiff must submit non-conclusory evidence of a conspiracy or other fraudulent wrong *which precluded his possible discovery of the harms that he suffered*."  *Pinaud v. County of Suffolk*, 52 F.3d at 1157 (citation omitted) (emphasis in original).  In the case at bar, even *assuming* that Plaintiff's claims are non-conclusory and, moreover, factually supported, Plaintiff by her own arguments and version of events has provided no evidence that any of Defendant's actions "*precluded [her] possible discovery of the harms that [s]he suffered*."  *See id*.  On the contrary, the copy of this pre-polygraph questionnaire which Plaintiff received in 2010, and which Plaintiff contends Defendant purposefully concealed from her prior to that time, *still* does not contain the evidence she implies was required in order for her to know to bring this claim – thus on the very logic that Plaintiff espouses which would have tolled the three-year statute of limitations to begin with, the statute still ought to be tolled because Plaintiff still ought to know nothing of the facts underlying Defendant's alleged fraud.

Furthermore, however, Plaintiff herself has stated that at the time at which she filled out this questionnaire and took the pre-employment polygraph, she *told* the polygraph examiner that she was

21

revealing her medical history, including that of her breast cancer, "because you already know and you're already going to turn me down," [Doc. 29] at 32, and, moreover, has stated that as long ago as 2007 she "believ[ed] that ... [D]efendant may have misrepresented its true reasons for rejecting her application." [Doc. 1] at 2.  A contention that the statute of limitations for her § 1983 claim ought to be equitably tolled because "the materials produced by ... [D]efendant in response to [Plaintiff's 2007] subpoena" – a subpoena which was issued at least in part *because*, as Plaintiff avers, she *already had suspicions* concerning the rejection of her application – "were not complete and did not include evidence which would have established that the stated reason for rejecting [her] application was not the true reason" *id*. at 2-3 would only support a finding of fraudulent concealment under Connecticut law were Plaintiff also contending that she was, until 2010, ignorant of Defendant's knowledge that she was a breast cancer survivor.  However, Plaintiff herself claims that she *provided* such information on her pre-polygraph questionnaire, although such information is not present on the copy she received in 2010.  Assuming *arguendo* that that is the case, Plaintiff cannot reasonably claim ignorance as to Defendant's knowledge of the same.

As discussed *supra*, in order to equitably toll the applicable statute of limitations due to fraudulent concealing, a plaintiff must not merely establish that there has been "fraudulent concealment of facts that, if known, would enhance a plaintiff's ability to prevail as to a cause of action of which the plaintiff was previously aware," but rather that "it would have been *impossible* for a reasonably prudent person to learn about his or her cause of action" under the relevant circumstances.  *Pearl v. City of Long Beach*, 296 F.3d at 84-85 (emphasis in original).  Two recent Second Circuit decisions are instructive.  When faced with a fraudulent concealment claim roughly four years ago, the Court of Appeals noted in *Harrison v. Harlem Hospital*, 364 Fed. Appx. 686, 688

22

(2010), that the appellant-plaintiffs in that matter had "failed to identify any specific fact they ha[d] learned *since* the limitations period expired which, if known by them sooner, would have led them to file suit sooner." Accordingly, the Court of Appeals held that those appellant-plaintiffs were "not entitled to equitable tolling on this basis." *Id.* The 2002 Second Circuit decision in *Pearl v. City of Long Beach*, 296 F.3d 76, is similarly instructive. There, the Court of Appeals noted that, "[i]n applying the doctrine of equitable tolling, [it had] made an important distinction between fraudulent concealment of the existence of a cause of action and fraudulent concealment of facts that, if known, would enhance a plaintiff's ability to prevail as to a cause of action of which the plaintiff was previously aware," and that it had "made it clear that [the Second Circuit] had in mind a situation where a plaintiff could show that it would have been *impossible* for a reasonably prudent person to learn about his or her cause of action." *Id.* at 84-85 (emphasis in original).

Plaintiff, who according to her own testimony – which the Court notes is otherwise unsupported by the evidence on record – not only provided information regarding her breast cancer status in this questionnaire but also stated upon providing it that she believed individuals involved in the processing of her application "already know" about this status and, presumably due to such status, were "already going to turn [her] down, cannot reasonably state such a claim. Even *assuming* that her proffered proof with respect to Defendant's alleged fraudulent concealment were more than conclusory; that indeed Defendant had, despite numerous individuals' testimony and claims to the contrary and a lack of supporting evidence, possessed knowledge of Plaintiff's breast cancer survivor status; and that, moreover, Defendant had allowed such knowledge to negatively impact its evaluation of Plaintiff's application, Plaintiff *still* cannot make a successful case for a tolling of the three-year statute of limitations due to fraudulent concealment. As in *Harrison v. Harlem Hospital*,

23

then, Plaintiff has "failed to identify any specific fact [she] learned *since* the limitations period expired which, if known by [her] sooner, would have led [her] to file suit sooner." *Harrison v. Harlem Hospital*, 364 Fed. Appx. at 688.  She is therefore "not entitled to equitable tolling on this basis." *Id.*

Even resolving all ambiguities and drawing all inferences in favor of Plaintiff, as the Court is required to do in its determination on a summary judgment motion – and whether *vel non* the Court accepts Plaintiff's statement that she noted on her pre-polygraph questionnaire that she was a breast cancer survivor – the Court finds that Plaintiff has not demonstrated that there has been a "fraudulent concealment of facts that, if known, would [have] enhance[d] [her] ability to prevail as to a cause of action of which [she] was previously aware," must less shown that a situation existed where, under the relevant circumstances, "it would have been *impossible* for a reasonably prudent person to learn about [Plaintiff's] cause of action." *Pearl v. City of Long Beach*, 296 F.3d at 84-85.

The Court is sympathetic to Plaintiff's claims.  Moreover, the Court does not endorse the sort of behavior in which Plaintiff alleges Defendant engaged – conduct the Defendant City vigorously denies having performed.  But the Court's duty on this motion is to apply the governing law to the evidentiary record presented by the parties.  The Court cannot conclude on the record before it in this matter that Plaintiff has met her burden of proof with respect to her claims of fraudulent concealment; accordingly, the Court must conclude that Plaintiff's lawsuit is time-barred and must be dismissed.

The Court notes, as well, that Plaintiff has provided no actual, non-conclusory evidence that Defendants were in possession of the knowledge that Plaintiff was a breast cancer survivor, much less whether such knowledge was factored into Defendant's employees' decision-making with respect

to Plaintiff's employment candidacy or whether there was any effort to fraudulently conceal such information from Plaintiff.  For this reason, too, Plaintiff cannot survive a motion for summary judgment.  As the Court dismisses the case on such grounds, it need not and does not reach judgment on Defendant's alternative arguments for summary judgment.

## IV.    Conclusion

The Court accordingly GRANTS Defendant's Motion for Summary Judgment, [Doc. 28], and DISMISSES the case WITH PREJUDICE.  The Clerk is directed to close the file.

It is SO ORDERED.

Dated: New Haven, Connecticut
        February 11, 2014

                                        /s/ Charles S. Haight, Jr.
                                        Charles S. Haight, Jr.
                                        Senior United States District Judge